**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALYCIA KAMIL MOATON, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, and CHICAGO | ) | |
| POLICE OFFICER JOHN DOES, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.     During the summer of 2020, the United States was in the throes of the largest social justice movement in history.  In a repudiation of anti-Black racism, white supremacy, police violence, and mass criminalization and incarceration, millions joined demonstrations around the globe—often lifting up the names of George Floyd, Breonna Taylor, Tony McDade, Jacob Blake, and too many other Black people killed by police.

2.     On August 15, 2020, Plaintiff Alycia Kamil Moaton joined hundreds of others in downtown Chicago to protest anti-Black police violence and demand substantial changes, including the massive reduction of taxpayer money being used to fund the Chicago Police Department ("CPD").

3.     Plaintiff Moaton was exercising her rights to freedom of speech and freedom of assembly when Chicago police officers unjustifiably subjected her to harassment and excessive force by spraying her with a chemical agent and groping her.  After abusing her, Chicago police officers falsely arrested Plaintiff Moaton and held her in custody for approximately eleven hours before releasing her early the next morning with no charges.

4.     The actions of the Chicago police officers were in violation of Plaintiff Moaton's constitutional right to free speech and assembly, her right to be free from unreasonable and unnecessary force, and her right to be free from unreasonable search and seizure guaranteed by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.  Plaintiff Moaton seeks just compensation for her bodily injuries, pain and suffering, mental anguish, humiliation, loss of personal freedom, and other damages she suffered as a result of the violation of her rights.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under Illinois state law.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

7.     Plaintiff Alycia Kamil Moaton is a 20-year-old Black resident of Chicago, Illinois who uses she/her pronouns.

8.     Defendant City of Chicago is and at all times mentioned herein was a municipality organized and operating under the statutes of the State of Illinois.  It is authorized under the statutes of the State of Illinois to maintain the Chicago Police Department, which acts as the City's agent in the areas of municipal law enforcement, and for which the City is ultimately responsible.  Defendant City was, at all times material to this Complaint, the employer and principal of the Defendant Officers.

9.     Defendants Chicago Police Officer John Does are City of Chicago employees with the CPD.  At all times relevant to the events at issue in this case, these defendants were

acting under color of law and within the scope of their employment with the CPD. Each is sued in his or her individual capacity for violating Plaintiff's rights guaranteed by the U.S. Constitution and Illinois state law.

## FACTUAL ALLEGATIONS

10.     On May 25, 2020, Minneapolis police officers murdered George Floyd when they suffocated him to death while he was handcuffed in a prone position on the ground in broad daylight on the street. Floyd begged to breathe, for his mother, and for his life, and witnesses begged the officers to let him go, before he ultimately took his last breath.

11.     Floyd's murder and the police murder of Breonna Taylor in her home in Louisville, Kentucky, in addition to recent police murders of too many additional Black people throughout the United States, sparked the largest social justice movement in the history of the United States and has included protests around the world against anti-Black police violence, white supremacy, systemic racism, and inequality.

12.     In Chicago, on August 15, 2020, there was a demonstration against anti-Black police violence downtown.

13.     In the afternoon on August 15, 2020, Plaintiff Moaton joined a protest organized by "Increase the Peace," a community organization in Chicago, in solidarity with Black lives.

14.     Plaintiff Moaton, due to her experience in leading actions and de-escalation, was invited to play a minimal role in supporting the event and the protesters, the bulk of whom were expected to be youth and young adults under the age of 21.

15.     Plaintiff Moaton attended the protest with Jalen Kobayashi, who was invited to speak at the rally.

16.     The protest started near Millennium Park.  At the beginning of the protest, protesters chanted and listened to invited speakers.

17.     After listening to speakers, the protesters proceeded to march.  Plaintiff Moaton marched down Michigan Avenue with the approximately 400-600 protesters and their police liaison, who all approached Wacker Drive without any violence or unrest.

18.     At Wacker Drive, Chicago police officers in riot gear surrounded Plaintiff Moaton and the protesters.  When the police violence escalated, the number of protesters began to diminish to the point where police outnumbered the protesters.

19.     When protesters attempted to walk over the bridge, Chicago police officers, without warning or a clear dispersal order, began beating them with batons, taking the protesters' belongings, and spraying them with chemical agents.

20.     Plaintiff Moaton helped protesters in need of medical attention, and also helped protesters leave the march and helped to deescalate the unrest.

21.     One or more unidentified Chicago police officers, without warning and justification, sprayed Plaintiff Moaton with a chemical agent on her body and face.

22.     Plaintiff Moaton had to use saline solution multiple times on herself to ease the burn of the chemical agent; regardless, her clothes chaffed to her skin, and the chemical agent aggravated Plaintiff Moaton's allergies and existing eye complications.

23.     Chicago police officers ordered the protesters to leave while continuing to kettle them, making it almost impossible to leave without being arrested.

24.     Chicago police officers cursed and yelled misogynistic and discriminatory slurs and threats at the protesters, including "that little cunt," "fucker," and called gender-deviant

people "he-she."  Officers also made comments such as, "I'll fuck you up," "Go protest about kids dying," and "I'll give you something to protest against."

25.     At some point, Chicago police officers set up a check-point area in a corner of the protest, where officers searched people as they left.

26.     When Plaintiff Moaton approached this check-point, wearing a tight t-shirt, shorts, and flip-flops, an unidentified Chicago police officer used both hands to search her.  The officer groped her back, buttocks, chest, genitals, and all over her clothes.

27.     When the officer groped Plaintiff Moaton's genitals, Plaintiff Moaton asked, "What are you doing?"  Other unidentified Chicago police officers nearby then shouted, "Arrest them!" and "Take them down!"

28.     When Jalen Kobayashi attempted to shield Plaintiff Moaton from the Chicago police officers, multiple unidentified Chicago police officers tackled Kobayashi, causing Kobayashi to fall on top of Plaintiff Moaton.  There were almost a dozen officers involved in this take down.

29.     Unidentified Chicago police officers pulled Kobayashi off of Plaintiff Moaton and then proceeded to arrest Plaintiff Moaton for no justifiable reason.

30.     While they were arresting her, the Chicago police officers said things like, "Fuck you, bitch, get on the ground," "We got your ass now," "Little cunt," and more vulgarities.

31.     While Plaintiff Moaton was on the ground, unidentified Chicago police officers held down her legs and aggressively pulled her arms behind her back to place zip-ties around her wrists, causing her pain.

32.     The officers took Plaintiff Moaton to a Chicago police squadrol down the street, where they again searched her.

33.     Jalen Kobayashi overheard one of the unidentified Chicago police officers ask another officer, "What's the arrest for?" to which the officer replied, "I don't know, you were supposed to get that."  The first officer then replied, "Mob action, just put down mob action."

34.     Plaintiff Moaton was taken to the 51st Street police station.  At the station, Plaintiff Moaton was searched and groped again by multiple unidentified Chicago police officers.

35.     Plaintiff Moaton was held roughly for eleven hours before finally being released the next morning with no charges.

36.     Plaintiff Moaton did not physically attack, assault, threaten, or resist the Defendant Officers or any other Chicago police officer at any time or in any way.

37.     Plaintiff Moaton did not commit any unlawful act and was engaging in constitutionally protected activity.

38.     Plaintiff Moaton has suffered significant emotional distress as a result of this incident, including increased anxiety, PTSD, migraines, and insomnia.  Additionally, she now experiences increased fear and discomfort when she is in the presence of police officers, and is hesitant to leave her house.

39.     Plaintiff Moaton is a dedicated community organizer but has been unable to work in that capacity because of the harm she suffered as a result of this incident.

40.     As a direct and proximate result of the actions of the Defendant Officers as detailed above, Plaintiff Moaton suffered and continues to suffer, *inter alia*, bodily injuries, including bruises to her body and eye and skin irritation, as well as pain and suffering, extreme mental distress, anguish, and fear.

## LEGAL CLAIMS

**COUNT I – 42 U.S.C. § 1983**
**Violation of the Fourth Amendment – Excessive Force**

41.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

42.     Count I is alleged against all Defendant Officers.

43.     The actions of the Defendant Officers described above constituted unreasonable and excessive force, without legal cause, in violation of Plaintiff Moaton's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

44.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff Moaton's clearly established constitutional rights.

45.     The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiff Moaton's constitutional rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

**COUNT II – 42 U.S.C. § 1983**
**Violation of the First Amendment – Freedom of Speech and Assembly, Intimidation and Retaliatory Use of Force**

46.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

47.     Count II is alleged against all Defendant Officers.

48.     As described in detail above, Plaintiff Moaton was participating in lawful, constitutionally protected activity on the public streets of the City of Chicago.

49.     The actions of the Defendant Officers described above violated Plaintiff Moaton's rights to freedom of speech and assembly guaranteed by the First and Fourteenth Amendments to

7

the United States Constitution, in that Plaintiff Moaton was abruptly prevented from further exercising her rights and suffered retaliation for having exercised her rights.

50.     The Defendant Officers retaliated against Plaintiff Moaton for engaging in protected speech by subjecting her to excessive force without legal justification.  Plaintiff Moaton's protected speech was the substantial and motivating factor for the Defendant Officers' use of force against her.  The Defendant Officers' actions were intended to make Plaintiff Moaton and other people engaging in constitutionally-protected speech and assembly at the protest wary of continuing to engage in such protected activities in the future and specifically to chill their rights guaranteed under the First Amendment.

51.     At all relevant times, the Defendant Officers were aware that Plaintiff Moaton was engaged in constitutionally-protected speech and assembly when they violated her rights. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff Moaton's clearly established constitutional rights.

52.     The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiff Moaton's constitutional rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

### COUNT III – 42 U.S.C. § 1983
### Violation of the Fourth Amendment – False Arrest

53.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

54.     Count III is alleged against all Defendant Officers.

55.     The actions by the Defendant Officers in falsely detaining, arresting, and imprisoning Plaintiff without reasonable suspicion or probable cause violated Plaintiff Moaton's Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

56.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff Moaton's clearly established constitutional rights.

57.     The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiff Moaton's constitutional rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of personal freedom, and legal expenses, as set forth more fully above.

### COUNT IV – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiff of Her Constitutional Rights

58.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

59.     Count IV is alleged against all Defendant Officers.

60.     Each of the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

61.     Each of the Defendant Officers took concrete steps to enter into an agreement to unlawfully use force on Plaintiff Moaton, and to detain and arrest Plaintiff Moaton, knowing they lacked reasonable suspicions and/or probable cause to do so, and for the purpose of violating Plaintiff Moaton's First, Fourth, and Fourteenth Amendment rights.

62.     In furtherance of this conspiracy, each of the Defendant Officers committed specific overt acts, misusing their police powers for the purpose of violating Plaintiff Moaton's

rights. They accomplished this goal by using excessive force on Plaintiff Moaton and unlawfully arresting her.

63. Each individual Defendant Officer is therefore liable for the violation of Plaintiff Moaton's rights by any other individual Defendant Officer.

64. As a direct and proximate result of the Defendant Officers' conspiracy, Plaintiff Moaton suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

## COUNT V – 42 U.S.C. § 1983
## Failure to Intervene

65. Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

66. Count V is alleged against all Defendant Officers.

67. During the events described above, the Defendants stood by without intervening to prevent the violation of Plaintiff Moaton's constitutional rights under the First, Fourth, and Fourteenth Amendments, even though they had the opportunity and duty to do so.

68. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff Moaton's clearly established constitutional rights.

69. As a direct and proximate result of the Defendants' failure to intervene, Plaintiff Moaton suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation and loss of personal freedom, as set forth more fully above.

## COUNT VI – Illinois State Law Claim
## Violations of the Illinois Constitution

70.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

71.     Count VI is alleged against all Defendant Officers.

72.     The actions taken by the Defendant Officers denied Plaintiff Moaton her state constitutional rights to be free from an unreasonable seizure and to free expression and assembly in a peaceable manner, as provided by the Illinois Constitution, Article I, sections 1, 2, 4, 5, and 6, and were a direct and proximate cause of Plaintiff Moaton's injuries as set forth above.

73.     The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiff Moaton's Illinois State Constitutional Rights.

**COUNT VII – Illinois State Law Claim**
**Assault and Battery**

74.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

75.     Count VII is alleged against all Defendant Officers.

76.     As described in detail above, the Defendant Officers physically abused Plaintiff Moaton by spraying her with a chemical agent and groping her, causing bodily harm.

77.     The actions of the Defendant Officers were affirmative acts and threatened to cause or did cause an unpermitted contact of a harmful and/or offensive nature, to which Plaintiff Moaton did not consent, and thus constitute assault and battery under laws of the State of Illinois.

78.      The actions of the Defendant Officers were committed in a willful and wanton manner.

79.     The Defendant Officers' actions directly and proximately caused injury and damage as set forth above.

**COUNT VIII – Illinois State Law Claim**

**Intentional Infliction of Emotional Distress**

80.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

81.     Count VIII is alleged against all Defendant Officers.

82.     The conduct and actions of the Defendant Officers set forth above were extreme and outrageous.  The Defendants' actions were rooted in an abuse of power and authority, and were done intentionally, willfully and wantonly, and/or knowing that there was a high probability that their conduct would cause Plaintiff Moaton severe emotional distress as set forth above.

83.     As a direct and proximate cause of the extreme and outrageous conduct of the Defendant Officers, Plaintiff Moaton was injured and experienced severe emotional distress constituting intentional infliction of emotional distress under Illinois State law.

**COUNT IX – State Law Claim**
**False Arrest**

84.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

85.     Count IX is alleged against all Defendant Officers.

86.     As described in detail above, the Defendant Officers falsely detained, arrested, and imprisoned Plaintiff Moaton without reasonable suspicion or probable cause and without having reasonable grounds to believe that an offense was committed by Plaintiff Moaton.

87.     The misconduct in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the Plaintiff's rights.

88.     The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiff Moaton's rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

**COUNT X – Illinois State Law Claim**
**Conspiracy**

89.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

90.     Count X is alleged against all Defendant Officers.

91.     The Defendant Officers together reached an understanding, engaged in and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to violate Plaintiff Moaton's rights guaranteed by the Illinois constitution and to be free from false arrest and the intentional infliction of severe emotional distress on Plaintiff Moaton.

92.     In furtherance of this conspiracy or conspiracies, the Defendant Officers, together with their un-sued co-conspirators, committed the overt acts set forth above.

93.     The Defendant Officers acted with malice, willfulness, and reckless indifference to Plaintiffs' rights.

94.     Each individual Defendant is therefore liable for the violation of Plaintiff Moaton's rights by any other individual Defendant.

95.     The conspiracy or conspiracies were and are continuing in nature.

96.     As a direct and proximate result of the Defendant Officers' conspiracy, Plaintiff Moaton suffered damages, including mental distress, anguish, humiliation, and violations of her rights, as set forth more fully above.

**COUNT XI – State Law Claim**

**Respondeat Superior**

97.     Plaintiff Moaton repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

98.     Count XI is alleged against Defendant City of Chicago.

99.     In committing the acts alleged in this Complaint, each of the individual Defendant Officers were members of, and agents of, the CPD, acting at all relevant times within the scope of their employment.

100.    Defendant City of Chicago is liable as principal for all torts in violation of state law committed by its agents.

**COUNT XII – State Law Claim**
**Indemnification**

101.    Plaintiff Moaton repeat and re-allege the foregoing paragraphs as if fully set forth herein.

102.    Count XII is alleged against Defendant City of Chicago.

103.    In Illinois, pursuant to 735 ILCS 10/9-102, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

104.    The Defendant Officers acted within the scope of their employment in committing the misconduct described herein.  Therefore, Defendant City of Chicago is liable as their employer for any resulting damages or award of attorney's fees.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Moaton requests that this Court enter judgment in her favor against the Defendants in the following manner:

1.      Award Plaintiff compensatory and punitive damages.

2.      Award Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

3.      Award Plaintiff such other and further relief as this Court may deem appropriate and just.

**JURY DEMAND**

Plaintiff demands trial by jury.


Dated: August 13, 2021

Respectfully submitted,

/s/ Vanessa del Valle
Vanessa del Valle

Vanessa del Valle
Roderick and Solange MacArthur
Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 606611-3609
312-503-5932
vanessa.delvalle@law.northwestern.edu

/s/ Sheila A. Bedi
Sheila A. Bedi

Sheila A. Bedi
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
312-503-8576
sheila.bedi@law.northwestern.edu

/s/ Joey L. Mogul
Joey L. Mogul

Joey L. Mogul, Janine Hoft, Ben Elson
Jan Susler, Brad Thomson

People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070
joeymogul@peopleslawoffice.com
janinehoft@peopleslawoffice.com
ben@peopleslawoffice.com
brad@peopleslawoffice.com
jsusler@peopleslawoffice.com